UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. ) CASE NO. 05-10019-RGS
)
DANIEL W. McELROY, )
AIMEE J. KING McELROY, and )
XIEU VAN SON )

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS, DANIEL W. MCELROY AND AIMEE J. KING MCELROY, FOR A FRANKS HEARING TO DETERMINE IF THERE WERE INTENTIONAL AND OR RECKLESS FACTUAL MATERIAL OMISSIONS IN THE AFFIDAVIT SUPPORTING THE SEARCH WARRANT DATED JUNE 25, 2001**

Defendants Daniel W. McElroy ("Mr. McElroy") and Aimee J. King McElroy ("Ms. King") submit that the affidavit in support of the warrant to search the second floor of 14 E, G Bristol Drive, South Easton, Massachusetts ("14 Bristol Drive") omitted material information that was critical to the judicial officer's determination of probable cause to issue a search warrant. In accordance with Franks v. Delaware, 438 U.S. 154 (1978), a hearing should be conducted to determine if Special Agent Nancy McCormick of the Federal Bureau of Investigation, intentionally and or recklessly omitted exculpatory statements provided by the government's informant, Michael Powers, as well as information relating to Mr. Powers' credibility and motive to lie, and whether these omissions were material to the magistrate's finding of probable cause for the search warrant dated June 25, 2001.

I.     Factual Background

A forty-eight page, fifty-eight paragraph affidavit prepared by FBI Special Agent Nancy McCormick formed the basis of the search warrant that was executed on June 26, 2001 at 14 Bristol Drive. See Government's Affidavit ("Govt. Aff.") attached hereto as Exhibit 1. Special Agent McCormick's affidavit relied primarily on information provided by an informant, Michael Powers, during four interviews that she conducted with him from April 2000 to March 2001. Id. at ¶20. According to the affidavit, the government's investigation began after Mr. Powers, who was employed as a bookkeeper at Daily A. King Labor, Inc. ("DAKL") from June 1996 to May 1998, reported information to the Insurance Fraud Bureau in the latter part of 1999 concerning an alleged insurance fraud scheme. Id. at ¶ 15. Subsequently, the information provided by Mr. Powers to the government formed the basis for the government's affidavit in support of its application for the search warrant. The factual assertions in the affidavit attributed to Mr. Powers were entirely derived from Mr. Powers' employment at DAKL from June 1996 until he left the company in May 1998 in order to start is own competing temporary employment agency, Commonwealth Temps, with another former DAKL employee, John Mahan.

The affidavit omitted important information of which the government was aware through its investigation and interviews with Mr. Powers before the search warrant was issued on June 25, 2001. Most notably, the affidavit did not mention that Mr. Powers approached the government and provided incriminating information concerning Mr. McElroy and Ms. King in 1999 only after his temporary employment agency came under

investigation by the Commonwealth of Massachusetts. See IRS Memorandum of Contact with John Mahan, dated March 18, 2002 (¶15) attached hereto as Exhibit 2. According to Mr. Powers' business partner, John Mahan, the Department of Employment and Training began its investigation of Commonwealth Temps in 1999, the same time period that Mr. Powers reported the defendants' alleged insurance fraud scheme to the Insurance Fraud Bureau. Id. Mr. Mahan also informed the IRS that Commonwealth Temps' lawyers were "in negotiations" and the government agent who investigated Commonwealth Temps was the same woman who investigated DAKL. Id.

The affidavit also failed to mention that the information Mr. Powers provided during interviews conducted by government agents, including Special Agent McCormick, was given in exchange for the government's promise not to use any of Mr. Powers' statements or information derived therefrom against him in any criminal case. See Immunity Letter dated February 15, 2000 attached hereto as Exhibit 3. In addition, Special Agent McCormick did not inform the magistrate that Mr. Powers had been criminally charged at the time he provided information to the government regarding Mr. McElroy and Ms. King and their involvement in the alleged insurance fraud scheme. Paragraph 2 of the Immunity Letter addressed to Mr. Powers' attorney specifically states, "Your client understands that he may, under some circumstances, have a right to have counsel present when communicating with representatives of the government concerning the criminal conduct with which he has been charged." Id. (emphasis added). However, the affidavit omitted any reference to the specific crimes with which Mr. Powers was charged, as well as the disposition of those charges. The government has also failed to disclose the specific nature and outcome of Mr. Powers' criminal charges to the defense

as well.

In addition, during an interview conducted on April 10, 2000, Mr. Powers informed Special Agent McCormick how he, Mr. McElroy and Charles Wallace prepared for an audit conducted by Reliance National Insurance. See Michael Powers' 302 dated April 10, 2000 at page 4 attached hereto as Exhibit 4. According to the FBI's interview report, "Powers advised he 'did not lose sleep' over their actions because the insurance premium was based on DAK[L]'s loss history and claims and not on their payroll." Id. This exculpatory statement which revealed Mr. Powers' innocent state of mind was not included in Special Agent McCormick's affidavit provided in support of the government's application for a search warrant.

Finally, during his fourth interview with the government conducted on March 12, 2001, Mr. Powers informed Special Agent McCormick, for the first time, that Mr. McElroy made an "overt threat" to him when he left DAKL, which was conditioned upon Mr. Powers starting a competing temporary employment agency. See Michael Powers' 302 dated March 12, 2001 at page 5 attached hereto as Exhibit 5. According to Mr. Powers, Mr. McElroy told him, "If you talk to my people, I'm going to come and talk to you." Mr. Powers met the condition of this alleged threat by starting his own competing temporary employment agency. However, Mr. McElroy took no action against Mr. Powers. In fact, Mr. Powers attempted to contact Mr. McElroy after this alleged threat but Mr. McElroy did not return his calls. Id. Neither Mr. Powers' account of the alleged conditional threat nor his unsuccessful attempt to contact Mr. McElroy were included in the affidavit.

On June 25, 2001, the government applied for a warrant to search the second floor

of 14 Bristol Drive. This application was made over three years after Mr. Powers' last contact with DAKL, Mr. McElroy, and Ms. King and two years after Mr. Powers first provided information to the government regarding the alleged insurance and tax fraud schemes which formed the basis for the affidavit. Despite this substantial lapse in time, a search warrant was issued by Robert Collings, Chief U.S. Magistrate Judge, and executed on June 26, 2001. The search resulted in the seizure of thousands of documents, including personnel files, receipts, timesheets, invoices, tax documents and other business records, as well as computers disks and computer equipment.

On January 26, 2005, the Grand Jury of the United States District Court, District of Massachusetts, returned indictments against Mr. McElroy and Ms. King, charging them with one count of conspiracy (18 U.S.C. §371), three counts of mail fraud (18 U.S.C. §1341), and fourteen counts of procuring false tax returns (26 U.S.C. §7206).

## II. Discussion

The Supreme Court has held that a defendant is entitled to a hearing to challenge the validity of a search warrant if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and the allegedly false statement is necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. at 155-56 (holding that evidence seized pursuant to a warrant based on materially false and misleading information is inadmissible at trial). If at the evidentiary hearing, "the allegation of ...reckless disregard [for the truth] is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the


affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search suppressed." Id. at 156.

It is well-established that intentional or reckless omissions of material information may trigger a Franks hearing. See United States v. Avery, 295 F.3d 1158, 1166-67 (10th Cir. 1997); United States v. Grant, 218 F.3d 72, 77 (1st Cir. 2000); United States v. Castillo, 287 F.3d 21, 25 (1st Cir. 2002). Courts have held that "recklessness" may be inferred when omitted information was "clearly critical" to the determination of probable cause. United States v. Reilly, 76 F.3d 1271, 1280 (2nd Cir. 1996); United States v. Vigeant, 176 F.3d 565, 573 (1st Cir. 1999). In addition, omissions from an affidavit are typically considered "material," when they would, if included in the affidavit, have cast doubt on the existence of probable cause. United States v. Legault, 323 F. Supp. 2d 217, 226 (D. Mass. 2004) Mr. McElroy and Ms. King submit that the omitted material information concerning Mr. Powers' exculpatory statements and motive to lie would have had a substantial impact on the magistrate's probable cause determination in this case.

## III. Argument

Mr. McElroy and Ms. King submit that Special Agent McCormick's affidavit included incriminating information provided by Mr. Powers which implicated Mr. McElroy and Ms. King in both the alleged insurance fraud and tax fraud schemes but omitted exculpatory evidence and other critical information relating to Mr. Powers' credibility and motive to lie. These material omissions demonstrated either an intentional and or reckless disregard for the truth and prevented the magistrate from making a fully informed probable cause determination before issuing the warrant to search 14 Bristol

Drive.

Specifically, Special Agent McCormick, through her affidavit, failed to inform the magistrate who issued the search warrant that Mr. Powers' temporary employment agency was under investigation at the time he came forward in the latter part of 1999 to inform the government that Mr. McElroy and Ms. King were involved an alleged insurance fraud scheme. The affidavit also inexplicably failed to mention that Mr. Powers had been criminally charged. The fact that Mr. Powers was facing either state or federal criminal charges during the period he was being interviewed by the government concerning the fraudulent tax and insurance schemes created an obvious motive to position himself in a more favorable light and shift the government's attention to someone else. Mr. Powers' strategy appears to have succeeded, as there has been no indication that he was ever successfully prosecuted.

The magistrate was also unaware that Mr. Powers agreed to be interviewed by the government only after he was granted letter immunity. As a result of Special Agent McCormick's omissions concerning Mr. Powers' criminal charges and the government's agreement to grant Mr. Powers letter immunity in exchange for information concerning Mr. McElroy and Ms. King, the magistrate was prevented from assessing Mr. Powers' true motive for assisting the government. See United States v. Vigeant, 176 F.3d at 573 (finding that the affidavit's omission of "clearly critical" information concerning informant's criminal history, recent plea agreement and other indicia of unreliability was reckless and prevented the magistrate judge from the opportunity to assess the "totality of the circumstances").

In addition, Mr. Powers' statement to Special Agent McCormick on April 10,

2000 that he did not "lose sleep" over the way in which he, Mr. McElroy, and Mr. Wallace presented information to an insurance auditor because the workers compensation insurance premium was based on DAKL's loss history and claims and not on payroll, reveals Mr. Powers' belief that he, along with Mr. McElroy and Mr. Wallace, were not committing a crime. This omission of exculpatory information was clearly critical to the judicial officer's probable cause determination because it directly demonstrated Mr. Powers' innocent state of mind concerning the non-criminal nature of the activities that ultimately formed the basis of the affidavit in support of the search warrant application.

Finally, the information Mr. Powers' provided to Special Agent McCormick regarding the conditional threat communicated by Mr. McElroy when Mr. Powers left DAKL to start his own competing temporary employment agency business and his subsequent unsuccessful attempts to initiate contact with Mr. McElroy should have been included in the affidavit because if directly related to Mr. Powers' credibility and motive to lie. First, it defies logic that Mr. Powers would recall that Mr. McElroy threatened him three years after the event and not provide this relevant information in any of his three prior interviews with the government. Second, the alleged threat was conditioned upon Mr. Powers going into competition with DAKL. Mr. Powers met that condition by starting his own competing temporary employment agency. In response, Mr. McElroy took no action against Mr. Powers. In fact, it was Mr. Powers who attempted to initiate contact with Mr. McElroy after Mr. Powers left DAKL and started his competing business. The magistrate should have been informed of Mr. Powers' dubious and untimely threat allegation and his subsequent unsuccessful attempt to contact Mr. McElroy. In addition, if there was actual animosity between Mr. Powers and Mr.

McElroy, such information would be critical to the judicial officer's assessment of Mr. Powers' overall credibility and his motive to wrongfully place blame on Mr. McElroy. See Robertson v. State, 236 Ga. App. 68, 70 (1999) (affiant's failure to inform the magistrate about the informant's criminal background, pending criminal charges and personal animosity towards the defendant deprived the magistrate an opportunity to determine the reliability of the informant).

IV. Conclusion

For the foregoing reasons, Mr. McElroy and Ms. King submit that they have made a substantial preliminary showing that in preparing the search warrant affidavit, Special Agent McCormick recklessly or intentionally omitted material information and therefore, request the court to conduct a Franks hearing to determine whether these omissions were material to the magistrate's finding of probable cause.

Respectfully Submitted,

DANIEL W. McELROY
By his Attorneys,

Stephen R. Delinsky (BBO #119120)
Andrew R. McConville (BBO #632804)
ECKERT, SEAMANS, CHERIN & MELLOTT, LLC
One International Place, 18th Floor
Boston, Massachusetts 02110
Telephone No.: (617) 342-6800
Facsimile No. (617) 342-6899

AIMEE J. KING McELROY
By her Attorney:

[signature]

Jack I. Zalkind
BBO # 538840
One International Place, 18th Flr.
Boston, MA 02110
Telephone: (617) 227-3950
Facsimile: (617) 342-6899

June 30, 2005