UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA </br></br> v. </br></br> DANIEL W. McELROY, </br> AIMEE J. KING McELROY, and </br> XIEU VAN SON, </br></br> defendants. | ) </br> ) </br> ) </br> ) </br> )  Crim. No. 05-10019-RGS </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
COUNT ONE OF THE INDICTMENT FOR ALLEGING MULTIPLE CONSPIRACIES

The United States, by its undersigned counsel, opposes the Motion of Defendants, Daniel W. McElroy and Aimee J. King McElroy, to Dismiss Count One of the Indictment for Alleging Multiple Conspiracies, June 30, 2005 (hereinafter "Mot. to Dismiss Count One"). As set forth below, while there is some division of authority as to the abstract question of whether Title 18, United States Code, Section 371, defines two distinct offenses, Count One in this case plainly describes a single conspiracy.

The Indictment charges that the defendants, together with Charles Wallace and Dich Trieu,[1] ran multiple corporations as a single temporary employment agency business. See Indictment ¶¶41-49. In the operation of that business, the defendants and their co-conspirators arranged to pay approximately $30 million dollars "off-the-books" between 1997 and 2001. Indictment ¶¶37-40, 50-52. By arranging for this massive "off-the-books" payroll, the

---

[1] Wallace and Trieu have been charged in a separate Information, United States v. Charles J. Wallace, Dich Trieu, Criminal No. 05-cr-10020 RCL.

1

conspirators evaded a large share of the major costs associated with employing workers, taxes (owed to the government) and mandatory workers compensation insurance premiums (owed to private insurance carriers).  Indictment ¶¶ 32-33.  The Indictment charges, in Count 1, that this jointly conducted criminal activity, all under the direction of defendants McElroy, King and Wallace, violated both prongs of the conspiracy Statute, 18 U.S.C. §371, in that the defendants' agreement and their execution of that agreement encompassed both a series of frauds upon insurance companies (in violation of the proscription of conspiracies to "commit any offense" clause) and a series of frauds upon the United States Treasury (in violation of the proscription of conspiracies "to defraud the United States").

Defendants now challenge the technical pleading of the Indictment, claiming – opportunistically, albeit anomalously – that they should have been charged with not one but two offenses, thereby doubling the maximum sentence(s) they would face if convicted of violating both prongs of the Conspiracy statute.

As a matter of hornbook law, conspiracy charges – such as the charge in this case – must steer between the Scylla and Charybdis of "duplicity" and "multiplicity."  On the one hand, "Duplicity is the joining in a single count of two or more distinct and separate offenses." United States v. Martinez Canas, 595 F.2d 73, 78 (1st Cir.1979).  On the other, "[a]n indictment is multiplicitous and in violation of the Fifth Amendment's Double Jeopardy Clause if it charges a single offense in more than one count." United States v. Brandon, 17 F.3d 409, 422 (1st Cir. 1994).

Defendants contend that Count One has steered too close to the vice of duplicity.  Although there is some division among the authorities, the short answer is that the charge is legally sound.  To their credit, defendants cite the decisions of the Eleventh Circuit in United

States v. Harmas, 974 F.2d 1262 (11th Cir. 1992), and the Second Circuit in United States v. Bilzerian, 926 F.2d 1285, 1301 (2d Cir. 1991), both of which rejected duplicity claims based upon single-count conspiracy charges alleging violation of both prongs of Section 371. Harmas reflects the majority view in stating, as a categorical matter that "[t]he statute is written in the disjunctive and should be interpreted as establishing two alternative means of committing a violation." Harmas, 974 F.2d at 1266 (citing United States v. Elkins, 885 F.2d 775, 781 (11th Cir.1989)). Bilzerian, by a slightly different route, also concludes that "there is no prosecutorial impropriety in charging defendant under both prongs of § 371." 926 F.2d at 1302. The Bilzerian decision notes:

> Although it is recognized that the government may not obtain two convictions or punish the defendant twice for the same conduct by alleging violations of both the defraud and offense clauses of the conspiracy statute . . . it may simultaneously prosecute the same conduct under both clauses.

926 F.2d at 1301-02.

The decision in United States v. Haga, 821 F.2d 1036, 1039 (5th Cir. 1987), on which defendants place much stock, is not to the contrary. Haga includes dicta, which the defendants quote, suggesting that the two prongs of Section 371 cannot be charged in a single count. See Mot. to Dismiss Count One at 3. But the issue before the Fifth Circuit in Haga was whether "the indictment failed to allege a conspiracy to defraud the United States . . . ." 821 F.2d at 1038. Haga did not address the question that is at issue here, which is whether a properly pled indictment could charge a conspiracy that violated both prongs.

Notwithstanding the weight of authority against their position, defendants attempt to distinguish their case from Harmas and Bilzerian by noting that, unlike those cases, the conspiracy at issue in this case encompassed crimes that had victims other than the United States

3

government.  They offer, however, neither logic nor precedent to show why this distinction should make a difference.

In any event, the decision in United States v. Levine, 750 F. Supp. 1433 (D. Colo. 1990), appears to address a duplicity challenge virtually identical to defendants' present claim.  In Levine the defendants contended that the government had improperly charged in a single conspiracy count a scheme that included multiple mail frauds and, as here, a scheme to defraud the United States by interfering with the collection of taxes.  750 F. Supp. at 1436.  In rejecting the duplicity challenge, the court reviewed the major precedents with a careful eye to the procedural posture in which challenges to the unit of prosecution had been decided.  In particular, the court rejected the notion that the duplicity issue should be deemed coterminous with the application of the Blockburger test to determine the propriety of allowing the government to bring charges in two successive indictments.  750 F. Supp. at 1436-37 (discussing United States v. Thompson, 814 F.2d 1472, 1475-77 (10th Cir. 1987).  Rather the court noted :

> The reasoning of the Ninth Circuit in United States v. Smith, 891 F.2d 703 (9th Cir. 1989), . . . which squarely addressed the duplicity issue, is compelling. In concluding that the defendants were properly charged in a single count with a conspiracy to defraud the United States and to commit offenses against the United States, the court stated that
>
>> [i]t would be strange to infer that Congress intended to punish twice a conspiracy that violates both clauses. Where a single conspiracy statute prohibits alternative acts, courts should not infer the legislature's intent to impose multiple punishment.  See Prince v. United States, 352 U.S. 322, 329 . . . (1957).  The clause "defraud the United States["] merely expands the scope of the offense by including another object of a conspiracy that might not otherwise be covered by the clause "any offense."
>
> Id. at 712-13 . . ..

Levine, 750 F. Supp. at 1437.

The reasoning of the Ninth Circuit's Smith decision, upon which the Levine court relies, is fully consonant with the First Circuit's approach to the question of duplicity in United States v. Verrecchia, 196 F.3d 294 (1st Cir. 1999). In that case, the Court of Appeals considered, "the question, addressed by the Supreme Court in the leading case of Bell v. United States, 349 U.S. 81 [ ] (1955), of '[w]hat Congress has made the allowable unit of prosecution under a statute which does not explicitly give the answer.' . . . ." 196 F.3d at 297 (quoting Bell, 349 U.S. at 81). Following the Supreme Court's lead in Bell, the First Circuit noted the "presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment," id., and followed the "Supreme Court's holding . . . that 'if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.'" 196 F.3d at 298 (quoting Bell, 349 U.S. at 84) (emphasis added). While the First Circuit has not addressed the precise point at issue in this case, it has noted, and has recently reiterated, that "where a statute . . . sets forth several different means by which an offense may be committed, it is permissible for a count in an indictment to allege all or several of these means in the conjunctive." United States v. Barbato, 471 F.2d 918, 922 n.3, quoted in United States v. Garcia-Torres, 341 F.3d 61, 66 (1st Cir. 2003).

There are, of course, serious risks associated with multiplicitous charges, above all the possibility of inflicting double punishment for a single crime. By contrast, the risks associated with duplicity in an Indictment are more abstract, such as the theoretical risk of a non-unanimous verdict, which is readily addressed by the simple expedient of providing the jury with a proper instruction. Thus, the court in Levine concluded that, even if it were mistaken as to the largely academic question of whether Section 371 describes multiple offenses or multiple means of committing a single offense, the "policy goals underlying the rule against duplicity are not

offended" by allowing a conspiracy charge to go forward that includes both prongs of section 371. 750 F. Supp. at 1348.

Although defendants do not cite it, the United States notes that the more recent decision in United States v. Ervasti, 201 F.3d 1029 (8th Cir. 2000), describes the apparent division of authority as to the construction of Section 371. 201 F.3d at 1040 n.9. In applying the Blockburger test to uphold an indictment which charged two separate conspiracy offenses, the Ervasti decision, could arguably be read as favoring defendant's position. It is worth noting, however, that the unifying feature in the apparently divided views of the courts of appeals is that, in virtually every instance, they uphold the prosecution's charging decision. This suggests that the various courts' categorical pronouncements about whether Section 371 defines one or two offenses may be less compelling than the pragmatic approach adopted by the district court in Levine. In other words, there may be more than one proper way to charge violations of Section 371.

Given the niceness of a distinction that seems to elude even the courts of appeals, it makes no sense to penalize the government for deciding in this case to opt for a form of charge that exposes the defendants to less, rather than more, punishment and that fairly encompasses and describes a single course of conduct. However many theoretical answers may be given to the one/two offense question, any fair reading of the indictment in this case discloses that a single, unified conspiracy has been charged. To rule otherwise would elevate semantics above substance. In this regard, it is worth pointing out that precisely the same factual allegations, the same elements of proof, and the same evidence at trial, could have been offered in an indictment

6

that charged only the "commit offenses" prong of Section 371, simply by including tax evasion and tax false statement in the enumeration of offenses that were objects of the conspiracy.[2]

Although the facts of the case – as they may permissibly be found by a jury – are not yet before the Court at this point, there is sufficient detail in the Indictment to permit at least some review of what the United States expects to prove in this case.  By any reasonable measure, what is alleged and what will be proved is a single conspiracy, with continuity of leadership, time frame, methods, organizational structure and evidence, from start to finish.  The ample caselaw addressing this issue[3] is instructive – and strongly supports the conclusion that Count One is properly pled as a single conspiracy.  Defendants correctly note that the First Circuit has used a multi-factor test to distinguish between single and multiple conspiracies, noting such points as "the similarity of the frauds involved, the coconspirators' objectives, the means used to achieve those ends, the similarities and differences in the evidence used to prove the conspiracies and the identities of the persons involved."  Mot. to Dismiss Count One at 5.  As the First Circuit has noted:

> It is a commonplace that a single conspiracy may embrace multiple crimes.  The similarity of the frauds, the core of common participants, the common location, and the overlap in timing all make it permissible to treat the conspiracy as an unbroken one under the criteria commonly used to distinguish between single and multiple conspiracies.  United States v. Cloutier, 966 F.2d 24 (1st Cir. 1992).

---

[2]   In many factual contexts, it is all but impossible to distinguish between a conspiracy to commit a Spies evasion [Spies v. United States, 317 U.S. 492 (1943)] and a Klein conspiracy [United States v. Klein, 247 F.2d 908 (2d Cir.1957) ].  Cf.  United States v. Sturman, 951 F.2d 1466, 1472, 1476 & n.2 (6th Cir. 1991) (noting commonality of intent requirement).

[3]   The question of single versus multiple conspiracies tends to arise, not as a challenge to the sufficiency of a charge, but rather as a post-trial claim of prejudicial variance.  See, e.g., United States v. Morrow, 39 F.3d 1228, 1233-34 (1st Cir. 1994).

United States v. Morrow, 39 F.3d 1228, 1233-34 (1st Cir. 1994).

In this case, all pertinent factors point to the existence of a single conspiracy. The frauds involved are nearly identical, in both means and object; all of the charges in the indictment arise from the defendants' practice of paying employees under-the-table and creating false documents in order to avoid disclosing the true size of the payroll of the McElroy's temporary employment agency business. In some years, the amount of payroll that was fraudulently concealed from insurance company auditors was higher than the amount of payroll that was fraudulently concealed from the IRS, but the companies involved, the individuals executing the fraud and the methods used are the same. The time period of the conspiracy is likewise identical. The evidence for the charges is almost entirely identical as well; while separate false documents were submitted to the IRS and to the various insurance companies, the falsity of those submissions will be demonstrated, in each case, by showing the true payroll of the business (i.e. by assembling and adding up the numerous handwritten weekly pay-slips which reflect the cash paid to individuals). The only thing that could point to a finding of separate conspiracies is that different entities – the United States, on the one hand, and various insurance companies, on the other – were victimized. But the notion that multiple victims somehow mean multiple conspiracies will not hold water. Indeed, the mail frauds that were an object of the conspiracy in this case were aimed at several different insurance companies, yet even the defendants do not suggest that there was more than one conspiracy to commit mail fraud.

It is no accident that each of the commonly-weighed factors for determining whether there are single or multiple conspiracies is satisfied in this case. As a practical matter, when individuals undertake to operate a massive "under-the-table" payroll scheme, they do so because of the variety of fraudulent savings to be garnered from fraudulently concealing their true

payroll.  Whether those savings come at the expense of the tax authorities or the insurance companies is secondary.

In sum, Count One of the Indictment properly charges a single conspiracy.  Defendants' motion should be denied.

                                                  Respectfully submitted,

                                                  MICHAEL J. SULLIVAN
                                                  United States Attorney

dated:  July 22, 2005

                                      By: /s/ Paul G. Levenson
                                          PAUL G. LEVENSON
                                          Assistant U.S. Attorney
                                          John Joseph Moakley United States Courthouse
                                          1 Courthouse Way, Suite 9200
                                          Boston, MA 02210
                                          (617) 748-3147